# UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Christopher West, | ) | C/A No. 5:13-cv-03088-DCN-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Report and Recommendation |
| Director William R. Byars, Jr.; Warden | ) | |
| Timothy Riley; Associate Warden Gary Lane; | ) | |
| Associate Warden Laura Caldwell; Ann Hallman; | ) | |
| Debra Barnwell; Donald Lane; Joy Lecompt; | ) | |
| Major James Parrish; Captain Barry Tucker; | ) | |
| Lieutenant Lawrence Lavigne; Sergeant Kevin | ) | |
| Williams; Sergeant Shannon Moore; Officer James | ) | |
| Parris; Nurse Tammie Barbour; Nurse Debra Parks; | ) | |
| Media Specialist Mary H McCabe; Sergeant Keith | ) | |
| Brian Williams, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff, proceeding pro se, brought this civil rights action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. This matter is before the court on Defendants' Motion for Summary Judgment filed on February 13, 2015. ECF No. 143. As Plaintiff is proceeding pro se, the court entered a *Roseboro*[1] order on February 17, 2015, advising Plaintiff of the importance of such motions and of the need for him to file an adequate response. ECF No. 144. Plaintiff responded to Defendants' Motion for Summary Judgment on May 26, 2015, ECF No. 160, and Defendants filed a Reply on June 4, 2015, ECF No. 161. Defendants' motion is now ripe for consideration. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B)

---

[1] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (requiring the court provide explanation of dismissal/summary judgment procedures to pro se litigants).

and Local Civil Rule 73.02(B)(2)(d) and (e), D.S.C. Because this motion is dispositive, a Report and Recommendation is entered for the court's review.

I.     Factual and Procedural Background

Christopher West ("Plaintiff") was an inmate at Tyger River Correctional Institution ("TRCI") of the South Carolina Department of Corrections ("SCDC") during the time period relevant to his Complaint, and Plaintiff filed this action on November 14, 2013. ECF No. 1. In his Complaint, Plaintiff maintains his causes of action are for "cruel and unusual punishment[,] negating access to courts, harassment, [and] medical neglect." *Id.* at 4. Plaintiff alleges that he was denied access to courts, his legal box, and legal supplies. *Id.* at 5. Plaintiff maintains that he wrote about these matters to several sources, including Warden Riley. *Id.* In response to his letters, Plaintiff alleges that Warden Riley sent Major James Parrish to "verbally threaten with physical harm all because Plaintiff wanted access to courts and legal material required by law and policy." *Id.* Plaintiff alleges that "[t]his was the initial sequence where intimidation and harassment started." *Id.* Plaintiff alleges that he wrote letters to sources concerning events at Tyger River, and "Nancy Byrd disposed of mail to these sourses[, and] Maria Middlebrooks continued to negate access to courts to negate [him] paper and pen." *Id.* at 6.

Plaintiff alleges an excessive force incident occurred on March 26, 2012, allegedly involving Captain Barry Tucker's ("Defendant Tucker") use of pepper spray because Plaintiff was "going to[o] slow for him." *Id.* Plaintiff further alleges that he "was then threaten[ed] and laughed at by Major James Parrish who [Defendant] Tucker promptly called and stated for this [Defendant] Tucker to pepper spray again for anything, which this captain did which Plaintiff was in total peppered (sic) sprayed with 445.2 grams of this dangerous and harmful chemicals. . . ." *Id.* Additionally, Plaintiff alleges he was taken to a room by Major James Parrish, Sgt. Jack Irwin and Officer Dustin Tranthum who instructed Plaintiff to undress "which was [a] violation

2

to strip cell with no blanket later, but this Major stated if Plaintiff didn't awkwardly place arms through flap, he would jerk them through the 6x6 whole (sic) and break arms." *Id.* at 7. Plaintiff alleges that Defendant Tucker wrote a "spurious incident report to fabricate strip cell, [and] during these strip cell [searches] Plaintiff wouldn't eat due to being cautious of something placed in food." *Id.* Plaintiff alleges that strip searches occurred to stop him from "utilizing outside sources." *Id.* Plaintiff then alleges he "was subjected to further abusive fabricated acts [on] June 4, 2012 where Mary McCabe who's been purposefully negating cop[ies] as was this day refusing to come and see legal material for copying." *Id.*

Plaintiff alleges that the second incident of excessive force occurred on July 2, 2012, when Sergeant Kevin Williams ("Defendant Williams") "came with juice placing mouth of cup up under touch nozzel (sic) of container as put other inmates which was unsanitary and it was known." *Id.* at 7-8. After Defendant Williams allegedly smirked at Plaintiff, Plaintiff stated "this doesn't hurt me," and poured out the juice in front of the officers. *Id.* at 8. Later, Defendants Williams and Parris returned with lunch trays. *Id.* Plaintiff alleges that Defendant Williams "spit or pretended to spit in [Plaintiff's] tray." *Id.* Plaintiff alleges that he asked Defendant Williams to give him another tray, but Plaintiff was refused. *Id.* Thereafter, Plaintiff alleges that Defendant Williams "slammed [Plaintiff's] left arm in the flap several times after attempting to physically force Plaintiff['s] arm from [the] food serv[ice] flap, which [he] couldn't, so he used pepper spray chemicals and [P]laintiff g[ot] off flap. *Id.* Approximately twenty-five minutes later, a force cell extraction team removed Plaintiff from his cell. *Id.* During the extraction, Plaintiff alleges that Defendant Williams "scratched and clawed and squeezed fingernails into [P]laintiff's kneecap and arms to further abuse" Plaintiff. *Id.* Plaintiff maintains that while he was sitting in a restraint chair, Defendant Williams "was allowed to stand around and taunt [him] further."

Plaintiff alleges that he told Nurse Brandon Weaver he was not "checked" before going into restraint chair even though Defendant Tucker told Nurse Weaver he was. *Id.* at 9. Plaintiff alleges he stayed in the control cell until 6:30 on July 4, 2012, and was never allowed to shower though he was sprayed with mace. *Id.* Plaintiff maintains that on July 5, 2012, he asked "for [Defendant] Tucker to have statements done about 7/2/12 incident plus need to have Investigator Donald Lane submit statement." *Id.* Plaintiff contends that Defendant Williams "is still allowed to be around as if nothing happen[ed]." *Id.*

Plaintiff alleges that a third incident of excessive force occurred on July 11, 2012, when Defendant Williams started taunting Plaintiff again, and Jamie Parris has "smart words toward Plaintiff." *Id.* Plaintiff maintains that while he was "cuffed" by Lieutenant Lawrence Lavigne, Defendant Williams attempted to "legcuff[]" him to which Plaintiff objected. *Id.* at 10. While Plaintiff stated his objection, Plaintiff alleges that Defendant Williams "slammed Plaintiff brutally into concrete wall with force to hurt [] which left shoulder injured and aggravated left wrist." *Id.* Plaintiff represents that he "never acted out of line," and two officers "pulled and stopped this out of control" behavior by Defendant Williams. *Id.* Plaintiff alleges on July 12, his cell was stripped "to obscure abuse of [Defendant Williams] to make it seem as Plaintiff was in the wrong." *Id.* Plaintiff maintains that he was placed in a holding cell in the North wing. *Id.* Plaintiff maintains he was not seen by medical staff on July 11, 2012. *Id.*

Plaintiff alleges that on November 13, 2012, a final incident of excessive force occurred when he was about to be transferred from TRCI to another SCDC facility. *Id.* at 12. Plaintiff maintains that on the morning of November 13, Defendant Tucker approached him with a big can of pepper spray "to try to intimidate." *Id.* Additionally, Plaintiff maintains he "was told to put arms through 7x7 service food flap for diabolic reason after Plaintiff [told] him this transfer

is only the start of it; which Plaintiff's arms were jerked through flap for provocation." *Id.* Plaintiff maintains he asked about K-swiss tennis shoes that were withheld from him. *Id.* Additionally Plaintiff alleges that he "was then taken to isolated north wing where this [Defendant] Tucker took and slammed Plaintiff into wall. . . ." *Id.* at 12. Plaintiff maintains that Officer Charles Chapman and Sergeant Rodrick Grove witnessed the incidents. *Id.* Plaintiff contends that Defendant Tucker "caused bleeding when [he] slammed [Plaintiff] into concrete wall," and Plaintiff suffered neck and left arm pain. *Id.*

During the incident, Plaintiff alleges that Grievance Coordinator Joy Lecompt came to serve Plaintiff with his grievances, and she inquired about the incident when Plaintiff stated he needed medical attention. *Id.* However, Plaintiff maintains he was denied medical attention and told the officers and the bus driver that "Plaintiff had been assaulted and need[ed] to see medical [] at bus terminal." *Id.* The transportation officers told Plaintiff they would seek medical attention for him at Allendale Correctional Institution ("ACI"). *Id.* Plaintiff alleges that he did not receive medical attention upon arrival at ACI but was seen the following day by Nurse Charold Smith who did a medical evaluation. *Id.* at 13. Plaintiff maintains he had "fresh marks still on [his] elbow from the key scratches when [he was] assaulted." *Id.* Once at ACI, Plaintiff maintains he submitted several sick form requests that went unanswered, but he was ultimately seen by Dr. Byrnes on November 27, 2012. *Id.* Plaintiff then summarizes his medical encounters through January of 2013, and alleges "medical negligence purposefully done [] outside the scope of official duties which makes them liable for pain and suffering where deliberate indifference is shown." *Id.*

Plaintiff seeks injunctive relief against Defendant Byars to "stop allowing correctional staff officers to manipulate acts though policys (sic) to fabricate or spuriously use to abuse as

Plaintiff describes in statement of facts. . . ." *Id.* at 14. Plaintiff also is requesting compensatory damages against each Defendant in the amount of $5,000; punitive damages against each Defendant in the amount of $10,000; mental and emotional damages against each Defendant in the amount of $5,000; litigation costs; and "any additional relief this court deems just, proper, and equitable." *Id.*

II.    Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a Complaint filed

by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g.*, *Cruz v. Beto*, 405 U.S. 319, 322 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

III.     Analysis

A.  Failure to Exhaust

Initially, Defendants argue they are entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies. ECF No. 143-1 at 8-13. Specifically, Defendants maintain that Plaintiff did not fully complete the grievance process prior to filing this action either by failing to initiate or not fully completing the grievance process. *Id.* at 9.

It appears that Plaintiff has filed over 300 grievances during his incarceration. For some of his allegations, Plaintiff filed Step 1 and Step 2 grievances. In fact, Defendants concede that Plaintiff filed Step 1 and Step 2 Grievances concerning the July 2 and July 11, 2012 alleged incidents of force. *Id.* at 9-11. In some instances Plaintiff filed a grievance that was unprocessed or an appeal that is still pending. *Id.* at 9-13. Based on the many grievances Plaintiff has filed and the differing statuses of the grievances, the undersigned will address all of Plaintiff's causes of action on the merits.

B.  Excessive Force Claims

Defendants argue that Plaintiff failed to state a claim for excessive force for any of the incidents alleged in his Complaint. ECF No. 143-1 at 14-23. Specifically, Defendants argue that "[t]here is absolutely no evidence that excessive force was used on Plaintiff by any Defendant in the present action." *Id.* at 16. Rather, Defendants maintain there was a substantiated need for the

amount of force used on each occasion. *Id.* at 17-23. Furthermore, Defendants contend that there is no evidence from medical records to support a claim that Plaintiff experienced significant injury as a result of alleged excessive force. *Id.* at 19-22.

The Eighth Amendment prohibition of cruel and unusual punishment "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). To establish a constitutional excessive force claim, the inmate must establish that the "prison official acted with a sufficiently culpable state of mind (subjective component); and [that] the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Williams*, 77 F.3d at 761). Thus, courts must analyze both subjective and objective components.

For the subjective component, Plaintiff must prove that Defendants assaulted and restrained him "maliciously and sadistically for the very purpose of causing harm" rather than in a good-faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986) (internal citation omitted). The Supreme Court has identified the following four factors to consider when determining whether a prison official's actions were carried out "maliciously and sadistically" to cause harm: (1) the need for application of force; (2) "the relationship between the need and the amount of force" used; (3) "the extent of the injury inflicted"; and (4) "the extent of the threat to the safety of staff and inmates as reasonably perceived by the responsible officials on the basis of the facts known to them." *Id.* at 321. Plaintiff has alleged four instances of excessive force in his Complaint. The undersigned will address each alleged incident of excessive force in turn.

        1.        July 2, 2012 Incident

Plaintiff alleges that on July 2, 2012, Defendant Williams "slammed [his] left arm in the flap several times after attempting to physically force Plaintiff arm from [the] food serv[ice] flap, which [he] couldn't, so he used pepper spray chemicals and [P]laintiff g[ot] off flap." *Id.* Thereafter, Plaintiff maintains that a force cell extraction team removed Plaintiff from his cell. *Id.* During the extraction, Plaintiff alleges that Defendant Williams "scratched and clawed and squeezed fingernails into [P]laintiff's kneecap and arms to further abuse" Plaintiff. *Id.*

Considering the first and second *Whitley* factors, the undersigned finds Defendants have presented evidence that demonstrates Defendant Williams used an amount of force necessary to restore order and not for the very purpose of causing Plaintiff harm. In support of their Motion, Defendants attached Defendant Williams' affidavit which indicates that from his perspective, Defendant Williams "exercised the discretion necessary to carry out [his] duties as an employee of SCDC." ECF No. 143-6 ¶ 8. Further, Defendant Williams attests that on July 2, 2012, Plaintiff "became verbally aggressive and threatening towards [him]" while he and other officers were issuing trays in Special Management Unit ("SMU"). *Id.* at ¶ 3. Defendant Williams maintains that Plaintiff did not comply with several directives instructing him to remove his arm from the food flap, and when Plaintiff did not comply Defendant Williams administered chemical munitions into Plaintiff's cell. *Id.* When Defendant Williams attempted to close the food flap, he avers that Plaintiff "grabbed [his] arm, causing a scratch." *Id.* Defendant Williams concurs with Plaintiff's version of events that thereafter an extraction team was assembled, and Plaintiff was escorted to a restraint chair. *Id.* As a result of the incident, Defendant Williams represents that Plaintiff was charged with "Striking an SCDC Employee and Refusing or Failing to Obey Orders." *Id.* Defendants also submitted the affidavit of Defendant Tucker with their Motion, and he also avers that Plaintiff refused to comply with several directives given to him on July 2,

2012. ECF No. 147-1 at ¶ 3. Consequently, chemical munitions were administered and later Plaintiff was "extracted from his cell and placed in a restraint chair." *Id.* While in the restraint chair, Defendant Tucker attests that Plaintiff "became verbally aggressive and threatening toward [Defendant] Williams." *Id.* at ¶ 4.

Regarding the July 2, 2012 incident, in his Response, Plaintiff maintains he "only put hand on flap, and Defendant Williams attempted to remove Plaintiff's hand physically and injured Plaintiff's forearm and shoulder through pulling through flap. Plaintiff was then pepper sprayed and released flap due to being injuried (sic) through Defendant Williams." ECF No. 160 at 18. Plaintiff maintains he "was never given any directives." *Id.* Additionally, Plaintiff submits two affidavits from fellow inmates concerning the July 2, 2012 incident. Inmate Daniel McClain avers that he witnessed an interaction between Plaintiff and Defendant Williams on July 2, 2012 and that they "had some type of words between each other for what I don't [know]!" ECF No. 1-8 at 15. Additionally, Inmate McClain avers: "During this time [Plaintiff] had his arm out the food flap. [Defendant] Williams then put the tray on top of the food cart, then forced the flap of the door back on [Plaintiff's] arm. After three times or four pushing the flap, [Defendant] Williams then pulled out his mase (sic) and began spraying [Plaintiff's] arm." *Id.* Inmate Patrick Gause avers that he noticed that Plaintiff had words with Defendant Williams and that "during this time [Plaintiff] had his arm out the flap. [Defendant Williams] then put the tray on top of the hot box then forced the flap of the door back up on [Plaintiff's] arm after three or four times of pushing the flap [Defendant Williams] them pulled out his mase (sic) and began spraying [Plaintiff's] arm." ECF No. 1-8 at 16. Aside from allegations in his Complaint or a grievance, Plaintiff has presented no other evidence concerning the July 2, 2012 incident.

No evidence demonstrates that Plaintiff ever complied with Defendant Williams' direct orders to remove his arm from the food flap on July 2, 2012. Rather, all evidence, including Plaintiff's own version of events as outlined in his Complaint and his two witnesses' accounts indicate that Plaintiff had pushed his arm through the cell flap when Defendant Williams was serving food. ECF Nos. 1 at 8; 1-8 at 15, 16. In his Complaint, Plaintiff represents that Defendant Williams instructed Plaintiff to "get off [the] flap as Plaintiff hadn't been served which Plaintiff states give me another tray." ECF No. 1 at 8. Therefore, the undersigned finds there was sufficient need for application of force under prong one of *Whitley* based on Plaintiff's aggression towards Defendant Williams and his refusal to obey a direct order. Furthermore, the undersigned finds that a reasonable amount of force was used based on the circumstances of the situation under the second prong of *Whitley*.

Turning to the extent of Plaintiff's injuries under the third prong of *Whitley*, the extent or existence of Plaintiff's injuries from the July 2, 2012 incident is unclear. In his Complaint, Plaintiff merely alleges he was "refused medical this day by Nurse Debra Parks which Plaintiff was seeing about left arm from the incident of July 2, 2012." ECF No. 1 at 9. Defendants included Plaintiff's medical encounters in support of their Summary Judgment Motion which indicate Plaintiff was seen by medical personal twice on July 2, 2012. ECF No. 143-3 at 18. The first medical encounter from July 2, 2012 indicates that Plaintiff was sprayed with chemical munitions but did not have shortness of breath and was "up walking around in his cell." *Id.* Prior to being placed in the restraint chair, Plaintiff was "not having any problems breathing." After being placed in restraint chair, medical notes indicate Plaintiff' "radial pulses good 2+ Cap refill to nails good, brisk. Feet restraints loose, Circulation to feet WNL. Cap refill toes good." *Id.*

The second medical encounter from July 2, 2012, occurred when a medical staff member was called to observe Plaintiff being removed from the restraint chair. *Id.* The note indicates:

> During removal, [Plaintiff] started yelling out and cursing, stating that one of the OFC's was digging his fingernails into the skin on his legs. This action was not witnessed. Once [Plaintiff] removed from chair, he was placed in the North Wing Holding Cell. [Plaintiff's] wrists and ankles were visible. There were some mild indentions noted to wrists and ankles where the cuffs had been but there was no red areas or any signs that circulation had been compromised. There was also no signs of injury by fingernails noted to either lower leg or foot.

*Id.* Medical notes also indicate that Plaintiff refused to be seen by the nurse on July 5, 2012. ECF No. 143-3 at 17. During a medical encounter from July 9, 2012, Plaintiff indicated that his left arm was bothering him because he "got [his] left arm slammed in the flap last week and it hurts[, and that] he was swollen but not anymore." *Id.* The examination indicated "no signs of injury to his left arm. Left arm noted without swelling or bruising. No redness noted either. Radial pulse regular." *Id.* As shown, none of the medical records indicate Plaintiff suffered an injury to his left arm or as a result of being maced on July 2, 2012. Therefore, the evidence before the court does not support a finding that Plaintiff suffered serious injuries as a result of the force used to against him under prong three of *Whitley*.

Finally, the undersigned examines the fourth prong of *Whitley*—the extent of the threat to the safety of staff and inmates as reasonably perceived by the responsible officials on the basis of the facts known to them. Here, Plaintiff admittedly held his arm out of the door flap and did not remove it during his interaction with Defendant Williams. The Fourth Circuit has held that a prison official may use reasonable force to compel obedience or to subdue recalcitrant prisoners. *See Bailey v. Turner*, 736 F.2d 963, 970 (4th Cir. 1984); *see also Hill v. Crum*, 727 F.3d 312, 328 n.3  (4th Cir. 2013) (noting there is a distinction "between instances where force is applied to restore order and instances where it is applied without justification.").

The undersigned finds there is no evidence supporting Plaintiff's claims that Defendants acted with an unreasonable amount of force. Therefore, no genuine issue of material fact exists indicating Plaintiff's Eighth Amendment rights were violated on July 2, 2012, and the undersigned recommends Defendants' Motion for Summary Judgment be granted on Plaintiff's excessive force claim for this incident.

2.     July 11, 2012 Incident

Plaintiff alleges that on July 11, 2012, Defendant Williams "slammed Plaintiff brutally into concrete wall with force to hurt [] which left shoulder injured and aggravated left wrist." ECF No. 1 at 10. In his Complaint, Plaintiff does not go into many facts about the July 11, 2012 incident or the events leading up to it, but in his Response, Plaintiff represents he "had a blanket upon door bars, not covering window but [was] told to take [it] down for spiteful reason. So, Plaintiff [did] it and let go on." ECF No. 160 at 18. Other than the allegations in Plaintiff's Complaint, grievance forms, and appeals, Plaintiff submits no other evidence concerning the July 11, 2012 incident.[2]

In his affidavit, Defendant Williams avers that he observed a sheet covering the bars of Plaintiff's cell on July 11, 2012. ECF No. 143-6 at ¶ 5. In response, Defendant Williams attests that he and other officers "restrained [Plaintiff] in an attempt to place handcuffs and leg irons on him." *Id.* Defendant Williams maintains that Plaintiff began resisting his attempts to place leg irons on Plaintiff so he "placed [Plaintiff] against the wall, upon which time leg irons were placed on him and he was escorted out of his cell." *Id.* As a result of the incident, Plaintiff was charged and convicted of Disorderly Conduct, Refusing or Failing to Obey Orders. *See id.*

_____

[2] The undersigned has reviewed all of Plaintiff's submissions of evidence, including ECF Nos. 1, 10, 12, 26, 27, 30, 39, 77, 89, 160, 162, and 163. In his submissions, Plaintiff includes grievances, appeals from grievances, requests to staff members, his own affidavits, affidavits from fellow inmates, incident reports, and medical encounters.

Defendant Tucker's affidavit also confirms Defendant Williams' version of events. ECF No. 147-1 at ¶ 5.

Turning to the extent of Plaintiff's injuries under the third prong of *Whitley*, Plaintiff alleges in his Complaint that his left shoulder was injured and his left wrist was aggravated during the July 11, 2012 incident. ECF No. 1 at 10. Other than these allegations, there is no evidence that Plaintiff suffered an injury from the altercation. Medical records indicate Plaintiff was seen in an SMU holding cell on July 12, 2012, the day after the alleged altercation. ECF No. 143-3 at 17. When the nurse asked Plaintiff if he had any injury, Plaintiff replied "no." *Id.* "Plaintiff then start[ed] yelling at [nurse] stating he needed to be seen [but was] walking around holding cell without difficulty, no obvious injury [was] noted." *Id.*

Plaintiff complained of shoulder pain during a July 16, 2012 medical encounter. *Id.* However, the medical encounter indicates that Plaintiff "was able to be [hand]cuffed comfortably with arms behind back," and no obvious injury, deformity, bruising, or redness was noted. *Id.* Plaintiff complained again of shoulder pain during a July 30, 2012 medical encounter. ECF No. 143-3 at 16. However, upon examination Plaintiff's left shoulder was "non-tender" and no swelling or deformity was seen. *Id.* The medical note indicates that Plaintiff was handcuffed behind his back without any discomfort. *Id.* Therefore, the evidence before the court does not support a finding that Plaintiff suffered serious injuries as a result of the force used against him under prong three of *Whitley*.

Finally, the undersigned examines the fourth prong of *Whitley*—the extent of the threat to the safety of staff and inmates as reasonably perceived by the responsible officials on the basis of the facts known to them. Here, Plaintiff admittedly had a blanket covering at least some of his cell which is against SCDC policy. Additionally, Plaintiff was convicted of refusing or failing to

obey an order for his non-compliance on July 11, 2012. ECF No. 143-2 at 7. The Fourth Circuit has held that a prison official may use reasonable force to compel obedience or to subdue recalcitrant prisoners. *See Bailey v. Turner*, 736 F.2d at 970; *see also Hill v. Crum*, 727 F.3d at 328 n. 3.

The undersigned finds there is no evidence supporting Plaintiff's claims that Defendants acted with an unreasonable amount of force. Therefore, no genuine issue of material fact exists indicating Plaintiff's Eighth Amendment rights were violated on July 11, 2012, and the undersigned recommends Defendants' Motion for Summary Judgment be granted on Plaintiff's excessive force claim for this incident.

3.      November 13, 2012 Incident

Plaintiff alleges that on November 13, 2012, he was taken into isolation in the north wing where Defendant Tucker slammed Plaintiff into a wall, causing him to bleed and causing Plaintiff injuries to his neck and left arm. ECF No. 1 at 12-13. Defendants maintain that Plaintiff became argumentative with Defendant Tucker concerning his personal property on November 13, 2012. ECF No. 143-1 at 17. Further, Defendants argue that Plaintiff refused to comply with Defendant Tucker's directives. *Id.*

In his affidavit, Defendant Tucker attests that on November 13, 2012, he retrieved Plaintiff from his cell and placed him in a holding cell. ECF No. 147-1 at ¶ 8. While Plaintiff was waiting for the bus transfer, Defendant Tucker maintains that Plaintiff "turned towards SCDC staff and became argumentative about his personal property [and] refused to comply with directives to turn back around." *Id.* Additionally, Defendant Tucker avers: "At that time, I placed my hand on [Plaintiff] and turned him back towards the wall away from SCDC staff. At no time did I or any other employee of TRCI slam [Plaintiff] against a wall or onto the floor prior to him

being placed on the bus for transfer." *Id.* The incident report concerning the incident also indicates that "no use of force only control techniques [were used on Plaintiff]." ECF No. 147-1 at 7.

In his Response, Plaintiff maintains the "November 13, 2012 incident evinces intentional and unjustified abuse purposefully done for no reason but abuse; through Defendant Tucker for animosity toward Plaintiff." ECF No. 160 at 25. Additionally, Plaintiff maintains he "never refused any directive nor was any given. There was never any type of verbal argument with Defendant Tucker. . . ." *Id.* Additionally, Plaintiff submits two affidavits from fellow inmates concerning the November 23, 2012[3] incidents. ECF Nos. 1-4 at 38, 39. Inmate Dexter Cobb avers that he witnessed an interaction between Plaintiff and Defendant Parrish on November 23, 2012, and that Defendant Parrish questioned why Plaintiff had written a letter to Timothy Riley. ECF No. 1-4 at 39. Inmate Cobb also attests that he witnessed Defendant Parrish threaten and become hostile with Plaintiff. *Id.* Inmate Patrick Gause avers that he witnessed a similar interaction between Plaintiff and Defendant Parrish on November 23, 2012. ECF No. 1-4 at 38. Plaintiff has presented no other evidence concerning an incident that occurred on November 23, 2012.

No evidence demonstrates that Defendant Tucker used any force against Plaintiff on November 13, 2012. Plaintiff's own witnesses merely give an account of an interaction between Plaintiff and Defendant Parrish from November 23, 2012, and there is only a mention of threats being made rather than force used against Plaintiff. The court finds that there is no evidence that Defendant Tucker maliciously slammed Plaintiff into a wall. Therefore, the undersigned finds

---

[3] Both of Plaintiff's witnesses' affidavits indicate they witnessed incidents on November 23, 2012, and not November 13, 2012. Both witnesses are inmates at TRCI, and Plaintiff was transferred to ACI on November 13, 2012, where he stayed until he was transferred to Kirkland Correctional Institution on June 11, 2013. *See* http://public.doc.state.sc.us/scdc-public/ (last visited July 23, 2015). Plaintiff has not returned to TRCI since his 2012 transfer. *See id.*

that a reasonable amount of force was used based on the circumstances of the situation under the second prong of *Whitley*.

Turning to the extent of Plaintiff's injuries under the third prong of *Whitley*, Plaintiff alleges in his Complaint that during the November 13, 2012 incident his arm was scratched causing his elbow to bleed and his left arm to become "reaggravated." ECF No. 1 at 12. Other than these allegations, there is no evidence that Plaintiff suffered an injury from the altercation. Medical records indicate Plaintiff was seen upon arrival at ACI on November 14, 2012, and Plaintiff reported that his neck and the left side of his body "ache[d] really bad." ECF No. 143-3 at 15. Plaintiff again reported pain to his left side and neck on November 19, 2012. *See id.* Other than his allegations of pain, no medical or clinical records indicate Plaintiff suffered an injury on November 13, 2012, under prong three of *Whitley*.

Finally, the undersigned examines the fourth prong of *Whitley*—the extent of the threat to the safety of staff and inmates as reasonably perceived by the responsible officials on the basis of the facts known to them.  As already found, there is no evidence indicating that force was used against Plaintiff on November 13, 2012, other than Defendant Tucker's re-positioning of Plaintiff. The undersigned finds there is no evidence supporting Plaintiff's claims that Defendants acted with an unreasonable amount of force. Therefore, no genuine issue of material fact exists indicating Plaintiff's Eighth Amendment rights were violated on November 13, 2012, and the undersigned recommends Defendants' Motion for Summary Judgment be granted on Plaintiff's excessive force claim for this incident.

4.     March 26, 2012 Incident

Plaintiff alleges an excessive force incident occurred on March 26, 2012, when Defendant Tucker allegedly pepper sprayed Plaintiff because he was "going to[o] slow for him."

ECF No. 1 at 6. Additionally, Plaintiff alleges he was taken to a room and instructed to undress "which was [a] violation to strip cell." *Id.* at 7. Defendants do not address Plaintiff's first alleged incident of excessive force in their Motion for Summary Judgment. *See* ECF No. 143. Plaintiff's raises Defendants' failure to address this incident in his Response to their Motion and states: "the March 26, 2012 intentional deleterious use of force stated in Complaint wasn't admitted nor denied and under Rule (8)(B) of the Federal Rules of Court in general responding to party pleading must (A) state in short and plain terms its defenses to each claim asserted against it and (B) admit or deny the allegations asserted against it by the opposing party." ECF No. 160 at 16. In Reply, Defendants maintain:

> Plaintiff is now claiming he was assaulted on March 26, 2012. This claim, if any, is being made for the first time in Plaintiff's Response. These allegations were absent from Plaintiff's Complaint. See ECF No. 1 at 2 ("The consolidated incidents of abuse where plaintiff was abused on three separate incidents . . . July 2, 2012, . . . July 11, 2012, and November 13, 2012 . . .."). Therefore, Defendants urge the Court not to consider this additional claim and/or allegations, if any, as well as any other additional claims and allegations made by the Plaintiff in his Response, as untimely and improperly asserted against these Defendants. See Webb v. Brawn, 568 Fed. App'x 252, 254 n.2 (4th Cir. 2014) (finding additional allegations not in Complaint not considered by Court).

ECF No. 161 at 2, n.1. Though Plaintiff indicated he was asserting only three claims of excessive force or "consolidated incidents of abuse" in the opening paragraphs of his Complaint, ECF No. 1 at 2, in the Statement of Claims section Plaintiff alleged a total of four incidents of excessive force occurred. Therefore, the undersigned will consider the March 26, 2012 allegation because it was originally raised in the Complaint and is not an additional allegation as Defendants assert.

Considering the first and second *Whitley* factors, the undersigned finds evidence submitted by Defendants indicate that Plaintiff was convicted of disorderly conduct, refusing or failing to obey an order, and disrespect on March 26, 2012. ECF No. 143-2 at 7. Additionally, medical notes indicate that on March 26, 2012, Plaintiff was "stripped out and gassed for

refusing to give up [inmate] mail." ECF No. 143-3 at 24. Medical notes also indicate that Plaintiff was shouting inappropriate remarks to medical staff on the day of the incident. *Id.* Other than his own allegations, Plaintiff has failed to submit any evidence that demonstrates Defendant Tucker used force for the very purpose of causing Plaintiff harm rather than to restore order.

Turning to the extent of Plaintiff's injuries under the third prong of *Whitley*, the extent or existence of Plaintiff's injuries from March 26, 2012 are unclear. In his Complaint, Plaintiff does not allege he suffered specific injuries as a result of excessive force from the March 26, 2012 incident. ECF No. 1. Defendants included Plaintiff's medical encounters in support of their Summary Judgment Motion which indicate Plaintiff was seen by medical personnel four times on March 26, 2012. ECF No. 143-3 at 24. The medical encounters indicate that Plaintiff's vital signs were normal and Plaintiff refused to take medicine. *See id.* No medical encounter indicates Plaintiff suffered an injury from excessive force on March 26, 2012. *See id.*

Finally, the undersigned examines the fourth prong of *Whitley*—the extent of the threat to the safety of staff and inmates as reasonably perceived by the responsible officials on the basis of the facts known to them.  Here, reports indicate Plaintiff was acting disorderly on March 26, 2012, and was convicted of three disciplinary infractions. ECF No. 143-2 at 7. The Fourth Circuit has held that a prison official may use reasonable force to compel obedience or to subdue recalcitrant prisoners. *See Bailey v. Turner*, 736 F.2d at 970; *see also Hill v. Crum*, 727 F.3d at 328. The undersigned finds there is no independent evidence, outside of Plaintiff's own allegations, supporting Plaintiff's claims that Defendants acted with an unreasonable amount of force. *See Anderson*, 477 U.S. at 256 ("Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.").

Therefore, no genuine issue of material fact exists indicating Plaintiff's Eighth Amendment rights were violated on March 26, 2012, and the undersigned recommends Defendants' Motion for Summary Judgment be granted on Plaintiff's excessive force claim for this incident.[4]

C.  Failure to Protect

Defendants maintain that Plaintiff's purported claim for failure to protect fails on the merits. ECF No. 143-1 at 23-24. Specifically, Defendants argue that "there is no evidence that any Defendants were at any time deliberately indifferent to a substantial risk of serious harm to Plaintiff." *Id.* at 24. In his Complaint, Plaintiff alleges that several SCDC officers witnessed incidents of excessive force. Therefore, to the extent Plaintiff raises a claim for failure to protect, the undersigned will address this cause of action on the mertis.

Under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." *Wolfish v. Levi*, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds*, *Bell v. Wolfish*, 441 U.S. 520 (1979). Thus, sentenced prisoners are entitled to reasonable protection from harm at the hands of fellow inmates and prison officials under the Eighth Amendment. *See Farmer v. Brennan*, 511 U.S. 825, 832–34 (1994); *see also Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987) ("Constitutional claims of convicted prison inmates that they have suffered physical harm at the hands either of prison officials or of fellow-inmates against whom prison officials failed to provide protection, are most appropriately assessed under the eighth amendment where both that source and the fourteenth amendment are invoked."). To establish a claim for failure to protect

---

[4] Though Defendants did not specifically address the March 26, 2012 alleged incident of force, they argued that "[t]here is absolutely no evidence that excessive force was used on Plaintiff by any Defendant in the present action." ECF No. 143-1 at 16. Furthermore, Defendants maintain that the need for force, if any was used, was substantiated by SCDC documentation. *Id.* Based on the broad arguments Defendants made regarding Plaintiff's excessive force allegations, the undersigned recommends granting summary judgment on all allegations of excessive force even though Defendants did not address the March 26, 2012 incident specifically.

from violence, an inmate must show: (1) "that he is incarcerated under conditions posing a substantial risk of serious harm," *Farmer*, 511 U.S. at 834, and (2) that the prison officials had a "sufficiently culpable state of mind." *Id.* (internal citations and quotations omitted). "In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* (internal citations omitted). To be deliberately indifferent, a prison official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Id.* at 837.

Here, Plaintiff cannot satisfy the first part of the test because evidence does not demonstrate that the conditions of his confinement posed a substantial risk of serious harm. Additionally, as outlined above, no evidence demonstrates Defendants acted with deliberate indifference to Plaintiff's safety under the second part of the test. *See Odom v. S.C. Dep't. of Corr.*, 349 F.3d 765, 770 (4th Cir. 2003) (internal quotations omitted). Specifically, no evidence demonstrates that any Defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837; *see also Rich v. Bruce*, 129 F.3d 336, 340 (4th Cir. 1997). This subjective assessment "sets a particularly high bar to recovery," *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008), which cannot be met by "a showing of mere negligence," *Young v. City of Mt. Ranier*, 238 F.3d 567, 575 (4th Cir. 2001). Accordingly, the undersigned recommends granting Defendants' Motion for Summary Judgment on Plaintiff's purported cause of action for failure to protect.

### D. Denial of Medical Care

Defendants argue that to the extent Plaintiff alleges a cause of action for inadequate medical care, this claim must be denied because Plaintiff's level of care does not rise to a level of deliberate indifference. ECF No. 143-1 at 24-25.

To prevent the entry of summary judgment on a cause of action for deliberate indifference to medical needs, a plaintiff must present evidence sufficient to create a genuine

issue of fact that the defendant was deliberately indifferent to his serious medical need. *Farmer*, 511 U.S. at 832-35; *Wilson v. Seiter,* 501 U.S. 294, 297 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). Deliberate indifference to a serious medical need requires proof that each defendant knew of and disregarded the risk posed by the plaintiff's objectively serious medical needs. *Farmer*, 511 U.S. at 846. An assertion of mere negligence or malpractice is not enough to state a constitutional violation, plaintiff must allege and demonstrate "[deliberate indifference] . . . by either actual intent or reckless disregard." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837. In other words, a plaintiff must allege facts demonstrating that defendant's actions were "[s]o grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id*. The Fourth Circuit Court of Appeals defines a serious medical need as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (internal citation omitted). A medical condition is also serious if a delay in treatment causes a lifelong handicap or permanent loss. *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

The undersigned finds that Plaintiff has not offered any evidence that would support a finding that Defendants intentionally or recklessly disregarded Plaintiff's medical needs or delayed Plaintiff's access to medical care. Rather, Defendants submitted 20 pages containing descriptions of multiple medical encounters for Plaintiff. ECF No. 143-3 at 4-24. Moreover, Plaintiff never alleges that he suffers or suffered from a serious medical condition that any Defendant simply ignored. Rather, the record demonstrates that SCDC medical personnel

regularly assessed Plaintiff. Accordingly, the undersigned recommends that Defendants be granted summary judgment on Plaintiff's medical indifference claim.

### E. Inadequate/Improper Investigation

Defendants argue that Plaintiff's allegations concerning an inadequate investigation fail as a matter of law. ECF No. 143-1 at 25-27. To the extent this cause of action needs to be addressed, the undersigned agrees.

"To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988). Here, at best Plaintiff alleges that certain Defendants have not properly investigated his claims. *See* ECF No. 1. However, this allegation(s) fails to set forth a claim for a violation of a constitutional right because violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983. *See Keeler v. Pea,* 782 F.Supp. 42, 44 (D.S.C. 1992). Rather, a § 1983 claim "guarantees a person's *constitutional* rights against violation by state actors." *Id.* (emphasis in original); *see also Scott v. Hamidullah,* No. 05–3027, 2007 WL 904803 *5 n. 6 (D.S.C. Mar. 21, 2007) (citing *United States v. Caceres*, 440 U.S. 741 (1978); *Riccio v. County of Fairfax, Virginia,* 907 F.2d 1459, 1469 (4th Cir. 1990); *Keeler,* 782 F.Supp. at 44)). Moreover, Plaintiff does not have a cognizable interest in an investigation concerning SCDC officers. *Davis v. Decker*, No. 4:13-CV-01500-RBH, 2013 WL 5934541, at *3 (D.S.C. Nov. 4, 2013) ("Plaintiff does not have a constitutional right to have police conduct an investigation or to have a specific outcome from a law enforcement investigation. Further, Plaintiff does not have a judicially cognizable interest in the criminal prosecution of another person."). Accordingly, the undersigned recommends granting

Defendants' Motion for Summary Judgment on Plaintiff's purported causes of action for failure to investigate.

### F.  Harassment

Defendants argue that "Plaintiff's allegations concerning verbal threats to him and other harassment by various Defendants also fail." ECF No. 143-1 at 27. The undersigned agrees.

Verbal threats and words, without more, are not sufficient to state a constitutional deprivation under § 1983. *See Henslee v. Lewis,* 153 Fed. App'x 178, 180 (4th Cir. 2005) *Davis v. Eagleton*, No. 3:12-1292-DCN-JRM, 2012 WL 3029497, at *3 (D.S.C. June 12, 2012). In his Complaint, Plaintiff maintains that Defendants verbally threatened him with physical harm. ECF No. 1. Additionally, he maintains he experienced "sequence[s] [of] intimidation and harassment." *Id.* at 5. To the extent Plaintiff alleges an Eighth Amendment violation based on threats or other harassment by SCDC officers, these allegations do not constitute a constitutional violation and fail as a matter of law. Accordingly, the undersigned recommends granting Defendants' Motion for Summary Judgment on Plaintiff's causes of action for harassment and threats.

### G.  Retaliation

Defendants maintain that to the extent Plaintiff raises a cause of action for retaliation, this claim should fail because Plaintiff has failed to "set forth any details concerning any alleged retaliation or any specific involvement by any Defendant." ECF No. 143-1 at 28. Additionally, Defendants argue that there is "absolutely no evidence of retaliation of any kind against Plaintiff by any Defendant." *Id.* The undersigned agrees.

"To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or

her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Jones v. Greninger*, 188 F.3d 322, 324–25 (5th Cir. 1999). Finally, a plaintiff must show that he suffered some adverse impact on the continued exercise of his constitutional rights as a result of the retaliatory conduct. *ACLU v. Wicomico Cty.*, 999 F.2d 780, 785 (4th Cir. 1993). Claims of retaliation by prison inmates are generally treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds to prisoner misconduct." *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (citing *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)). Plaintiff has failed to provide any evidence to establish that Defendants intentionally denied him of a constitutionally-protected right in retaliation for some action taken by Plaintiff. Accordingly, the undersigned recommends that summary judgment be granted on Plaintiff's retaliation claims.

H.     Conspiracy

Defendants argue that to the extent Plaintiff raised a cause of action for conspiracy, this claim fails because "there is absolutely no evidence that any conspiracy existed between any of the Defendants in relation to the incidents in question." ECF No. 143-1 at 28-29. The undersigned agrees.

"To establish a civil conspiracy under § 1983, [Plaintiff] must present evidence that the [Defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in Appellants' deprivation of a constitutional right. . . ." *Hinkle v. City of Clarksburg, W.Va.*, 81 F.3d 416, 421 (4th Cir. 1996). Additionally, the *Hinkle* court held: "[T]o survive a properly supported summary judgment motion, [Plaintiff's] evidence must, at least, reasonably lead to the inference that [Defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Id.* Plaintiff's purported cause of action for conspiracy must also fail as a matter of law because Plaintiff has failed to

demonstrate any deprivation of a constitutionally-protected right. Accordingly, the undersigned recommends granting all Defendants summary judgment on Plaintiff's purported conspiracy claims.

I.     Denial of Access to Courts

In his Complaint, Plaintiff maintains he was "negat[ed] access to courts," ECF No. 1 at 2; 4, Defendants "suffocate[ed] [his] access to courts," *id.* at 5, and "negated his legal box [] and legal supplies," *id.* Defendants argue that to the extent Plaintiff raises causes of action against Defendants for failure to respond to letters/requests, these claims fail and must be dismissed. ECF No. 143-1 at 29. Additionally, Defendants argue that to the extent Plaintiff raises a cause of action against Defendants because they "failed to properly process his grievances or improperly den[y] ones that he already filed," these claims fail. *Id.* at 29-30.

Initially, the undersigned notes that Plaintiff does not have a constitutional right to a grievance process within the prison system under the Due Process Clause, or any other statute. *See Adams v. Rice*, 40 F.3d at 75 (finding "the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."). Thus, there is no constitutional right to file a grievance, nor is there a constitutional right to have a grievance timely determined within the prison system. The right of access to the courts is the right to bring to court a grievance that the inmate wished to present and violations of that right occur only when an inmate is "hindered [in] his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 350–53 (1996). In order to make out a prima facie case of denial of access to the courts, a Plaintiff cannot rely on conclusory allegations; he must identify with specificity an actual injury resulting from official conduct. *Cochran v. Morris*, 73 F.3d 1310, 1316 (4th Cir. 1996); *see also White v. White*, 886 F.2d 721, 723–24 (4th Cir. 1989). Actual injury requires that the inmate

demonstrate that his "nonfrivolous" post-conviction or civil rights legal claim has been "frustrated" or "impeded." *Lewis*, 518 U.S. at 353–55.

Though Plaintiff argues he was denied access to the courts in his Complaint, the record shows that Plaintiff offered no evidence to establish a denial of access to the courts, or that he suffered any harm in any court action he had pending. On the contrary, Plaintiff has filed several federal actions, refuting his denial of access claim. Additionally, the undersigned did not recommend dismissing any of Plaintiff's causes of action based on his failure to exhaust. The undersigned therefore recommends that Defendants be granted summary judgment on Plaintiff's claims for failure to process grievances and denial of access to courts.

J.      Qualified Immunity

Defendants assert that they are entitled to qualified immunity on Plaintiff's claims. ECF No. 143-1 at 30-31. The Supreme Court in *Harlow v. Fitzgerald* established the standard that the court is to follow in determining whether a defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. 800, 818 (1982).

When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 230-33 (2009). The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. *Id.* at 236. In determining whether the right violated was

clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Parrish v. Cleveland*, 372 F.3d 294, 301-03 (4th Cir. 2004). "If the right was not clearly established in the specific context of the case—that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit." *Id.* (citations and internal quotation omitted).

The record before the court shows that these Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion. Defendants did not transgress any statutory or constitutional rights of Plaintiff that they were aware of in the exercise of their respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, the undersigned recommends that these Defendants be granted qualified immunity.

### K.  Eleventh Amendment Immunity

Defendants argue that as employees of the SCDC they are not subject to suit in their official capacities.  ECF No. 143-1 at 13.  The undersigned agrees.  The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has long held that the Eleventh Amendment also precludes suits against a state by one of its own citizens. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). This immunity extends not only to suits against a state per se, but also to suits against agents and instrumentalities of the state. *Cash v. Granville Cnty. Bd. of Ed.*, 242 F.3d 219, 222 (4th Cir. 2001). Because Defendants are agents or employees of the State of South Carolina, when acting in their official capacities, they are not "persons" within the meaning of 42 U.S.C. § 1983. *Will v.*

*Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a state nor its officials acting in their official capacities are 'persons' under § 1983."). A State cannot, without its consent, be sued in a District Court of the United States by one of its own citizens upon the claim that the case is one that arises under the Constitution and laws of the United States. *Edelman*, 415 U.S. at 663. The State of South Carolina has not consented to be sued in this case. S.C. Code Ann. § 15-78-20(e). As an arm of the State, Defendants are immune from suit under the Eleventh Amendment. Accordingly, the undersigned recommends that Plaintiff's claims against Defendants in their official capacities be dismissed.

L.       Respondeat Superior

Defendants contend they are entitled to summary judgment on Plaintiff's purported cause of action for respondeat superior because this doctrine does not apply in § 1983 cases. ECF No. 143-1 at 31-32. Additionally, Defendants contend that to the extent Plaintiff's allegations may be construed to allege that any Defendant failed to properly supervise SCDC employees, Plaintiff's allegations fail to state a claim. *Id.*

"Supervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of *respondeat superior*, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." *Miltier*, 896 F.2d at 854. To successfully pursue such a theory, Plaintiff must demonstrate that he faced a pervasive and unreasonable risk of harm from a specified source, and that the supervisor's corrective inaction amounted to deliberate indifference or tacit authorization of the offensive practices. *Id.*; *see also Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984).

Plaintiff brought suit against multiple Defendants, but Plaintiff does not allege that all of these Defendants had any personal involvement in the incidents giving rise to his Complaint. Further, as discussed above, Plaintiff failed to show facts that establish any of the Defendants violated his constitutional rights. Therefore, the undersigned finds that Plaintiff has failed to establish a causal link between any action or inaction on the part of the correctional officers, treating medical personnel, and their supervisors. Accordingly, the undersigned recommends that summary judgment be granted to all Defendants on any purported cause of action for supervisory liability or respondeat superior.[5]

---

[5] Defendants also argue in separate sections of their Summary Judgment Motion that (1) Plaintiff has not shown evidence of physical injury; (2) Plaintiff's claims are moot because he is no longer incarcerated at TRCI; and (3) Plaintiff has failed to set forth facts sufficient to constitute any cause of action under state law. ECF No. 1 at 31-35. Based on the undersigned's recommendation in the preceding sections, it is unnecessary to address these arguments on their merits.

V.      Conclusion and Recommendation

Based on the foregoing, it is recommended that Defendants' Motion for Summary Judgment, ECF No. 143, be GRANTED, and this case be dismissed.


IT IS SO RECOMMENDED.


July 27, 2015                                   Kaymani D. West
Florence, South Carolina                       United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**